Good morning, Your Honors, and may it please the Court, my name is Sabrina DeMasse, and I represent Roman Pyanzin, the petitioner in this matter. I respectfully request to reserve two minutes for rebuttal. Please watch the clock. I will, Your Honor, thank you. Your Honors, the Board of Immigration Appeals denied the petitioner's asylum claim for one reason only, his failure to obtain a corroborating written statement from his mother in Russia. And yet, the immigration judge in this matter never advised him prior to his merits hearing of the need under the REAL ID Act and pursuant to Wren v. Holder to obtain any form of corroborating documentation. Nonetheless, Your Honors, once the petitioner was advised both of the crucial nature of this evidence and of the fact that it could be translated in the United States and did not have to be translated by a notary in Russia, a government official, he procured the letter and he filed a motion to reopen his case with the Board of Immigration Appeals. This letter was a very substantial five-page document that addressed almost every single reason the immigration judge cited for denying the case as a matter of corroboration or credibility. And yet, the Board denied the motion to reopen, finding that there was no ineffective assistance of counsel by Attorney Markman, and also failing to address whether or not the judge's failure to follow his Wren obligations justified reopening the case. What do we make of the fact that when your client was asked at the hearing why he didn't have a letter from his mother, that he didn't say anything about his attorney not having advised him that he needed one? Your Honor, I think what's really crucial, and if the court looks at the testimony he gave in response to the judge's questions, which is at 335 of the administrative record in the 17 case, at the end of that exchange, the judge confirms with him that the sole reason he didn't obtain it is his belief that it had to be translated in Russia and the accompanying fear that he had for his mother's safety in going to a Russian government official to translate a statement essentially about government misdoing. I think what we take from that, Your Honor, is that even if we assume Attorney Markman is being accurate in his assessment, that he told Mr. Paisan on a number of occasions that he should get this document, one has to ask why he didn't provide the simple and clear legal advice to his client that you didn't have to get it translated in Russia. Why he didn't stop the hearing at that moment and say, Your Honor, now that I understand my client's fear is that he has to get a document translated in Russia, I request a continuance under Wren v. Holder so we can obtain it and have it translated here, as is completely proper under the governing guidance for evidence in immigration court. So I think, Your Honor, whether we take the petitioner's declaration with his motion to counsel, or whether we take Attorney Markman's response as correct, that he was advised but said I can't do it because I'm worried about my mother's safety, we have an effective assistance of counsel by Attorney Markman. Could I go back to your reference and your reliance on Wren? So Wren talked about the applicant should provide evidence that corroborates an otherwise credible testimony, and in Yale-Wayne we said that Wayne didn't satisfy this Wren requirement because the IJ had determined, had made an adverse credibility determination. And here the IJ made an adverse credibility determination based on demeanor and the timing of the medical record. And so explain why you think Wren would be applicable in this context. Your Honor, I think there's two reasons. First of all, in my brief, and forgive me, I'm blanking on the case names at the moment, but there were several cases that I cited in which this court has found that when the failure to corroborate is an integral part of the adverse credibility determination, then Wren still applies. But it wasn't here, right? Because the IJ made the adverse credibility determination on two completely separate issues, demeanor and the medical record. Well, I think, Your Honor, that goes then to my second point. The board didn't affirm any of those other grounds. The board... Right, but if we're looking at adverse, if we're looking at attorney ineffectiveness based on a Wren argument, which is what you raised in your brief that he should have raised of the Wren corroboration issue, we look at what the IJ had held, and the attorney during the IJ proceedings would have known that Wren was not applicable there. Well, Your Honor... Oh, I'm sorry. So that was... I was just confused by the reliance on Wren in that context. Well, respectfully, Your Honor, if we take ourselves back to the moment... Let's take ourselves back to the moment in the merits hearing where the petitioner says, I'm afraid for my mother's safety. I don't want her to have to go to a government notary. At that moment, attorney Markman has no foreknowledge that the immigration judge is going to make any other findings, but he certainly is now on notice, just based on the cross-examination by DHS and the immigration judge's questions, that this document is important. And he's also on notice that apparently his client is laboring under the incredibly mistaken, the damaging belief that he has to get it translated in Russia. So I believe, Your Honor... First of all, I believe that it's still the fact that the board only affirmed on the corroboration and then a motion to reopen was brought where that corroboration was presented, is a Wren circumstance. But even so, Your Honor, if we go back to just that moment, attorney Markman had an obligation at that point to ask for the continuance in order to get that document. Even if it was only to solve what he could foresee was going to be a corroboration problem, that would be part and parcel of whatever the ultimate decision by the IJ would be. Your Honor, I think in addition, something for the court to consider is simply the fact that the board didn't address the IJ's Wren violation, if it existed or didn't exist, in its decision on the motion to reopen. And I take Your Honor's point that it is not as clean cut as the Wren facts might be, but I believe the board still has an obligation to address properly raised legal arguments. And there is an entire section of the motion to reopen presented to the board, which argues that there was a due process violation by the judge under Wren, why it was prejudicial to the case, and why it justified reopening. And instead of the board coming back and saying, as Your Honor has questioned me, well is this really a Wren circumstance, they simply ignored the argument. And that is legal error under this court's precedent. They have an obligation to at least address a properly raised legal argument. And the only way to rectify that is remand at this point. Did the, did your client argue that equitable tolling, he met the other equitable tolling factors, because even if you showed an effective assistance of counsel, that doesn't necessarily forgive the untimely nature of the motion to reopen. He did argue equitable tolling in his motion to reopen. The board did not address that in its denial. So I don't think we have a circumstance before this court where it needs to review whether equitable tolling is appropriate, because it wasn't part of the BIA's decision on the motion. So your argument is really that the BIA erred in not addressing the ineffective assistance of counsel claim correctly by weighing the affidavits. Your Honor, we have two arguments. One is, as you indicate, we disagree, obviously, with the board's finding that Attorney Markman didn't commit ineffective assistance. I think it's really notable in this case, Your Honor. The government seems to agree. Their answering brief in the direct appeal of the asylum calls out Attorney Markman for essentially copying and pasting a non-responsive brief to this court that he had filed at the BIA, and states that he essentially waived all of the arguments that he could have made on behalf of his client. So I actually don't think that the parties here are in too much disagreement about the quality of Attorney Markman's representation. But separate from that, the board just failed to address whether the IJ's due process violation was a separate error from Attorney Markman that would have qualified for reopening. You want to save the rest of your time? I do, Your Honor. Thank you. Okay. We'll hear from the government. May it please the Court, I am Sarah Byram, appearing on behalf of the United States Attorney General. This court should deny the consolidated petitions for review because Petitioner cannot show that the record compels the conclusion that his corroborating evidence is sufficient to establish the relief and protection he seeks, or that the board abused its discretion in denying reopening. The root of Petitioner's inability to meet his burden on all fronts is his continued inability to show a coherent and consistent story. And first, turning to the underlying merits, the petitioner doesn't show that the record compels the conclusion that the evidence that he gave was sufficient to meet his burden of proof. The board's decision on that is correct. And so there, of course, the board said that the submitted evidence without the mother's letter was insufficient to meet the burden of proof. He didn't bring that letter. Now, to the extent that Petitioner raises Wren in this situation, I would note that Wren requires, obviously, the notice and the opportunity explained, and Petitioner had that in this case. So regardless of, you know, whether we think that Wren should apply, does apply, regardless, even if he got that notice, he was on notice both by government counsel and repeated questioning by an immigration judge about this letter from his mother. They asked him for the opportunity to explain he had that opportunity, and he gave multiple reasons for why he was not going to be obtaining and bringing forth this letter. So, you know, Petitioner claims now that it was really only this translation issue and that, of course, in the motion to reopen, that counsel didn't tell him he needed this letter. But before the agency, he gave many different exclamations, which he doesn't reconcile and which is the basis for why the board ultimately also denied his reopening motion. I guess I'm having trouble, I'm sorry, I'm having trouble seeing how his declaration is irreconcilable with his testimony at the hearing. I don't, I don't see at the hearing that he was ever asked about whether he had been counseled to obtain a letter from his, from his mother. So can you just explain that for me? Sure. So at the hearing, when he was asked both, you know, by government counsel and as well by the immigration judge and the various exchanges, whether he was going to bring a letter, he gave a number of different reasons. He said that he thought the medical records he provided was stronger evidence. He didn't provide a letter because he didn't think it would help. He also said that, that she, he wasn't going to provide a letter because his mother was scared. At one point, he also said that he didn't provide a letter because when he was filing, she wasn't in town. He said he didn't want to put her in harm's way. And he also said that he didn't, excuse me, that she did not want to have the letter translated. But in addition to that, he also makes the point that she didn't want to put it on paper at all. So even apart from the translation aspect, he indicated at the hearing that she didn't feel comfortable even putting it on paper. And so he never says at any point that my attorney didn't tell me I needed one. I didn't know I needed one. Oh, I can get that letter. You know, I have no trouble getting that. At any point in that hearing, in the merits hearings, he doesn't, he doesn't give that as an explanation. He gives many other explanations for why he doesn't have the letter and why he's not going to be bringing it. So the fact that now he claims, well, the only reason I didn't know I needed it was because my attorney didn't tell me, strains credulity because he has thought about it. He indicated as much at the hearings, the merits hearings, when he said, you know, he didn't think it would help or she was scared. She wasn't in town. And so there really is a disconnect between his later reasoning, which is, oh, he just didn't tell me I didn't know versus all of these other reasons that he gave and that he had the notice, obviously, that the that the letter was needed to meet his burden of proof and that he wasn't going to be bringing it. And it wasn't until push comes to shove, as he admits in his declaration, he kept losing and he thought, well, I should probably get this letter that, you know, everyone, the agency keeps denying my claim for. So it's at that point that he finally gets this letter and he brings it. And of course, he brings it in the context of a motion to reopen for ineffective assistance of counsel. And so in bringing it. In that framework, he has to show, of course, that it's his burden to show, of course, that, you know, his former counsel rendered the proceedings so unfair, you know, and it may have affected the outcome. The board didn't act irrationally or arbitrarily in, you know, looking at the statements that he had made, taking them as true, presumably in accordance with the inherently unbelievable rule, but also as is required. And as we've stated in our brief, looking to the entirety of the evidence, the entirety of the record to ascertain whether the acts, the adequate factual record existed and whether the complaint was legitimate and the ineffective complaint was legitimate and substantial. And I have a I have a different question. The BIA says in its decision that it's denying the motion because it finds the attorney's letter to be more persuasive than Pionson's declaration. And I mean, isn't isn't that just an error under our precedence? Was the BIA entitled to to do that kind of weighing of the letter? I think that what the BIA was doing there was looking to the the whole of the record and as it as it needs to do under Lemisco and other precedents to look to the entirety of the record. Petitioner had, excuse me, under oath already spoken about the exact heart of the claim that he brings now. The board was entitled and proper to look at that. And they said, well, considering the totality of the claim here, even if we take his statements as true in the affidavit, we recognize he's also made these other statements. And for these reasons, the petitioner's counsel's statement was afforded more weight. It wasn't that they discredited it altogether or or questioned the veracity. They said taking as both is true. And in light of the the totality of the record where we have these conflicting statements made under oath that it found the attorney's statements to to have more more weight in it. And, you know, petitioner doesn't really try to reconcile or really confront, you know, these two these these multiple sets of statements. And they were made under oath. And Lemisco indicates that where, you know, petitioners had a hearing, there was this opportunity. There are these statements under oath that the board can consider this evidence of face value. And that's what it ultimately did in determining that on this inconclusive record, that attorney Markman's statements, you know, were afforded more weight. And so that's what happened in this case. But again, if we we look to did the board act irrationally or arbitrary here, and it's really hard to find that they did where he he brings this belated complaint that the only reason was that my attorney didn't tell him. But the hearings below at the merits tell an entirely different story. And for these reasons, the court should deny the petitions for review because the petitioner cannot meet his burdens of proof. If there are no further questions, I'll just briefly someone just in conclusion, again, petitioner cannot meet his burden of proof here on either plane, and so the court should deny the petition for review here. Thank you. I think you saved a minute, a little over a minute for rebuttal. Thank you. I would like to briefly address points raised by both Judge Ikuda and Judge Thomas. Judge Ikuda, I was thinking about your question about whether Wren applies in these circumstances, and I believe the court's precedent still shows that it does. The court's decision in Votarai versus Lynch, which is 835 F. 3rd, 1037, excuse me, I believe is on point in that case. In fact, you had both an I.J. finding of adverse credibility and failure to corroborate and a BIA affirmance on both of those grounds. And this court still determined that there was a Wren obligation because the corroboration was part and parcel of a larger adverse credibility determination. So I think here, Your Honor, the applicability of Wren is even clearer because the board didn't affirm on the demeanor or the inconsistencies perceived by the I.J. only on the corroboration. The other thing I'd like to address that was raised by Judge Thomas and discussed by counsel for the respondent is, is this a reconcilable testimony? And I don't believe it is, Your Honors. There is nothing irreconcilable about saying I wasn't advised by my attorney I need this. I certainly wasn't advised by anybody that it could be translated here. I was fearful for my mother's safety. I understood corroboration to mean my medical records, which, of course, medical records are a form of corroborating evidence. He doesn't say he thought they were stronger or that they were the only he doesn't say that he thought they were stronger or they somehow. But just that that is what he understood corroboration to mean. You're over time, so please sum up, Your Honors. If there's no further questions, then we would ask the court to either grant the petition for review because substantial evidence shows an effective assist of counsel by attorney Markman or because the board failed to address the due process violations by the immigration judge. Thank you. Thank you. We thank both sides for their argument. The case of Piansen versus Garland is submitted and we're adjourned for this session. This court for this session stands adjourned.
judges: IKUTA, THOMAS, Vratil